UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MAYDA NAZARIO-LUGO,

    Plaintiff,

v.

CARIBEVISIÓN HOLDINGS, INC.,

    Defendant.

Civil No. 09-2262 (JAF)

## OPINION AND ORDER

On February 19, 2013, we entered an order joining two corporate entities—America-CV Station Group, Inc., and America CVPR, Inc. (together, "Respondents" or "America-CV Companies")—as the party defendants in this case. (Docket No. 133.) Our order granted a motion filed under Fed. R. Civ. P. 25(c), filed by Plaintiff Mayda Nazario-Lugo ("Plaintiff"). (Docket No. 121.) Respondents opposed Plaintiff's motion. (Docket No. 132.) Respondents now move for reconsideration of our order.[1] (Docket No. 134.) Plaintiff submits a motion requesting us to issue an amended judgment that includes Respondents as party defendants. (Docket No. 136.) For the reasons that follow, we grant Plaintiff's motion and deny Respondents' motion.

**I.**

**Background and Facts**

We described the factual background of this case in our earlier order joining Respondents as party defendants in this case. (Docket No. 133.) We repeat some of those

---

[1] Respondents characterize their motion as pursuant to Federal Rules of Civil Procedure 59(e) and 60. (Docket No. 134.)

facts here. Additional factual background can be found in our earlier opinion granting partial summary judgment to Plaintiff. (Docket No. 82.)

In this case, Plaintiff sued her former employer, Caribevisión, for breach of contract. (Docket No. 1.) Plaintiff sued because she was terminated several years before the expiration of her five-year employment contract as General Manager of Caribevisión. (Id.) We initially dismissed the case based on abstention. (Docket No. 47.) The Court of Appeals reversed and remanded the case for proceedings consistent with its holding. (Docket No. 75.) At a status conference following the First Circuit's order, Caribevisión failed to appear. (Docket No. 81.) We then entered partial summary judgment in favor of Plaintiff, holding Caribevisión liable for $787,294.52, plus prejudgment interest, attorneys' fees equal to 15% of the judgment amount, and litigation costs and expenses. (Docket No. 82.) We held a final hearing on April 24, 2012, at which Caribevisión again failed to appear. (Docket No. 85.) In our docket entry approving Plaintiff's expenses, we noted Caribevisión's "bold failures to meet its obligations." (Id.)

Following our entry of judgment, Plaintiff began post-judgment discovery. Despite repeated efforts by Plaintiff, Caribevisión has failed to produce any of the discovery required. (Docket No. 121 at 4.) Plaintiff then submitted a Rule 25(c) motion, seeking to substitute the America-CV Companies for Caribevisión. (Docket No. 88.) We initially granted the motion. (Docket No. 94.) Respondents moved for reconsideration, arguing, inter alia, that a hearing was required to protect their due process rights. (Docket No. 96.) We granted the motion for reconsideration and ordered a hearing set for December 10, 2012. (Docket No. 97.) At our hearing on December 10, Caribevisión again failed to appear, despite a subpoena requiring its appearance. (Docket No. 98.)

Civil No. 09-2262 (JAF) -3-

We ordered the depositions of Marcos Crespo, María Ramos, and Omar Romay ("Romay"). (Id.) Romay is the CEO of America-CV Station Group, Inc., and America CVPR, Inc.[2] (Docket No. 132-1 at 1.) We also entered another order requiring Caribevisión to appear for deposition under penalty of sanctions. (Docket No. 100.) Caribevisión did not appear, but Plaintiff did depose Crespo, Romay, and Ramos. Following these depositions, Plaintiff then filed a motion "reiterating request for Rule 25 relief." (Docket No. 121.) In that motion, she sought to join the America-CV Companies rather than substitute them for Caribevisión. (Id.) Respondents opposed, and we granted the motion. (Docket Nos. 132; 133.)

## II.

## **Legal Standards**

Respondents now bring a motion pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60. (Docket No. 134.) In this circuit, "a motion asking 'the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under [Rule] 59(e)'" of the Federal Rules of Civil Procedure. Cahoon v. Shelton, 647 F.3d 18, 29 (1st Cir. 2011) (quoting In re Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987)). First Circuit case law "generally offer[s] three grounds for a valid Rule 59(e) motion: An 'intervening change' in the controlling law, a clear legal error, or newly-discovered evidence."[3] Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 11 (1st Cir. 2012) (quoting Morán Vega v. Cruz Burgos, 537 F.3d 14, 18 (1st Cir. 2008)). Respondents' motion argues that our judgment was based on a clear legal error. (Docket No. 134 at 1.) We disagree.

---

[2] This description of Romay's position comes from Romay's own affidavit. (Docket No. 132-1 at 1.)
[3] The First Circuit has also mentioned prevention of "manifest injustice" as another narrow ground for granting a Rule 59(e) motion. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citing 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)).

Civil No. 09-2262 (JAF) -4-

The First Circuit has described Rule 25(c) as a "discretionary 'procedural vehicle' in which 'the transferee is brought into court solely because it has come to own the property in issue.'" Negron-Almeda, 579 F.3d at 52 (quoting Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir.2003)). The rule applies to a broad range of transfers in interest. Id. (citing 6 JERRY E. SMITH, MOORE'S FEDERAL PRACTICE-CIVIL § 25.32 (2009)). For example, Rule 25(c) has been "invoked to substitute a successor in interest who . . . obtained the assets of the corporation against whom judgment had been rendered." Id. (quoting Explosives Corp. of America v. Garlam Enter. Corp., 817 F.2d 894, 906 (1st Cir. 1987) (internal citations omitted)). The rule applies to ordinary transfers and assignments, as well as to corporate mergers. 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1958 (2012)).

**III.**

**Analysis**

In their motion, Respondents attempt to distinguish this case from ones in which Rule 25(c) has been found appropriate. (Docket No. 134.) Plaintiff argues that Respondents' motion is "merely a repetition" of the arguments that Respondents made in their opposition brief. (Docket No. 136 at 2.) This characterization is largely accurate. For example, Respondents' reconsideration motion and opposition brief both contain the following arguments: 1) "substantial" changes were made in the management and operations of Caribevisión and the America-CV Companies (Docket Nos. 132 at 5; 134 at 4 ); 2) a Rule 25(c) order is appropriate only if real property, rather than money alone, is the property

Civil No. 09-2262 (JAF)                                                                                                     -5-

subject to judgment (Docket Nos. 132 at 7; 134 at 6); and 3) Plaintiff has failed to show that she is unable to satisfy her judgment against Caribevisión.  (132 at 1; 134 at 7.)

Each of these arguments necessarily fails.  We remind Respondents that "a party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that could, and should, have been made before judgment issued." Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 11 (1st Cir. 2012) (internal citations and quotation marks omitted).

In addition to being too little and too late, Respondents' arguments also ignore important facts.  First, Respondents do not acknowledge any of the numerous factors that we found established a strong degree of continuity between Caribevisión and the America-CV Companies.  (Docket No. 133 at 6-7.)  In our earlier order, we agreed with Plaintiff's assertion that the America-CV Companies "simply stepped into the shoes previously worn by Caribevisión" by maintaining: The same branding of its channel as "CV 24"; same offices and lease; same valuable FCC licenses; many of Caribevisión's contracts; and many of the same key employees.  (Docket Nos. 121 at 36; 133 at 6-7.)  In particular, we noted that the new entities retained Marcos Crespo as a key supervisory employee; Félix Román, who continued for a time as financial manager; traffic director María Ramos; as well as Emma Torres and María Negrón, the person in charge of sales.  (Id.)

These facts that Plaintiff cited in her Rule 25(c) motion, and which Respondents did not contest, are sufficient to impose successor liability on Respondents.  Respondents argue that they can be joined only if Plaintiff shows, under traditional corporate law principles, that the America-CV Companies are the legal successors to Caribevisión. (Docket Nos. 132;

134.)  Even if we were to apply the law that Respondents suggest,[4] we think that the America-CV Companies would have to be considered Caribevisión's successors.

The general rule of corporate successor liability is that a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor.  See Dayton v. Peck, Stow & Wilcox Co., 739 F.2d 690, 691 (1st Cir. 1984).  This general rule, however, is subject to four well-recognized exceptions permitting liability to be imposed on the purchasing corporation:

> [W]hen the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations.

Id.

Here, we think that the asset sale from Caribevisión to the America-CV Companies constituted a de-facto merger.  "The First Circuit, consistent with other courts and learned treatises, has observed that continuity of shareholders is one of the 'key requirements' for application of the de facto merger doctrine."  American Paper Recycling Corp. v. IHC Corp., 707 F.Supp.2d 114, 121 (D. Mass. 2010) (quoting Dayton, 739 F.2d at 693).  Continuity of the shareholders "is found where the purchaser corporation exchanges its own stock as consideration for the seller corporation's assets so that the shareholders of the seller corporation become a constituent part of the purchaser corporation." Id. (citations omitted).

---

[4] Plaintiff urges that we apply the principles of successorship from relevant labor and employment law cases. See, e.g., Asseo v. Centro Medico Del Turabo, 900 F.2d 445, 451 (1st Cir. 1990) (applying successor liability in unfair labor practices case).  We agree that when applying this framework, the America-CV Companies can be held liable because they "acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Asseo, 900 F.2d at 451 (quoting Golden State Bottling Co. v. NLRB, 414 U.S. 168, 182, (1973)).  As Plaintiff methodically demonstrated in her Rule 25(c) motion, these factors described in Asseo were present in this case.  (Docket No. 121.)

That is exactly what happened here, as Romay's own statement shows. (Docket No. 132-1 at 4.) In return for transferring substantially all of its assets to the America-CV Companies, Caribevisión received a 50% interest in the America-CV Companies. (Id.) This assets-for-stock swap, while not dispositive, "tips the scales in favor of finding a merger." Devine Food Brokers, Inc. v. Wampler Foods, Inc., 313 F.3d 616, 619 (1st Cir. 2002).

Additional factors point in favor of holding the America-CV Companies liable as Caribevisión's successors. First, Caribevisión received a relatively high proportion of stock in the new entities: 50%. In other cases from this circuit, much lower amounts have been held to constitute a merger. See American Paper, 707 F.Supp.2d at 121 (D. Mass. 2010) (discussing case in which a 12.5% ownership interest constituted de facto merger) (citing Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359, 676 N.E.2d 815 (1997)).

To determine whether a merger occurred, in addition to the "key requirement" of continuity of shareholders, courts also consider the following three factors: (1) whether there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; (2) whether the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) whether the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. See American Paper, 707 F.Supp.2d at 121.

In this case, each of these factors point in favor of finding a de-facto merger. As we noted above, the America-CV Companies merely stepped into the shoes of Caribevisión by maintaining the same branding of its channel as "CV 24"; same offices and lease; same

valuable FCC licenses; many of Caribevisión's contracts; and many of the same key employees. (Docket Nos. 121 at 36; 133 at 6-7.) We also note that Caribevisión was granted four of the eight positions on the board of directors of the new entity, America-CV Station Group. (Docket Nos. 121 at 17 n.5; 121-4 at 32.) Caribevisión also transferred its valuable contract to broadcast horse races from the Hipódromo, which has been a major source of revenue for Caribevisión and the America-CV Companies. (Docket No. 121 at 38-39.) A well-known television personality, Rubén Sánchez, continued at the new entities following the transaction. (Id.) The first factor, continuation of the enterprise, is thus clearly present. American Paper, 707 F.Supp.2d at 121.

The second factor, while not as clearly established as the others in this case, also suggests that the America-CV Companies can be held liable for Caribevisión's debt to Plaintiff. See American Paper, 707 F.Supp.2d at 121. This factor inquires whether the seller corporation has ceased its ordinary business operations, liquidated, and dissolved as soon as legally and practically possible after the merger. Id. at 120. While Caribevisión did not formally dissolve, it appears by all accounts to have become inactive, yielding all of its assets and programming functions to the America-CV Companies. Here, we must also bear in mind that the "rationale underlying this exception is the protection of third parties." Id. at 121. Plaintiff's interest in receiving just compensation, therefore, must be considered as part of our inquiry into this factor. It is well-established that successor liability is an equitable doctrine, both in origin and nature. See Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 267 (1st Cir. 1997). Thus, applying the principles of equity, we are "loath to elevate form over substance." Id. The fact that Caribevisión is still technically alive does not prevent us from joining its successors, when Caribevisión has for

all intents and purposes ceded its functions to the America-CV Companies. See also Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co., 417 U.S. 703, 713 (1974) ("In such cases, courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form.").

Finally, the third factor that courts consider is also present in this case: The America-CV Companies assumed the vast majority of the obligations of Caribevisión necessary to continue the normal business operations. See American Paper, 707 F.Supp.2d at 121. The America-CV Companies assumed Caribevisión's lease, contractual obligations with advertisers and suppliers, as well as the majority of Caribevisión's labor and operational contracts in Puerto Rico. (Docket No. 121 at 22.) In a letter requesting an extension of Caribevisión's lease, Romay acknowledges that Caribevisión transferred "all of the contracts and assets that [Caribevisión] had to the new 'joint venture.'" (Id. at 23.) The new joint venture entities, Romay said, would continue to be responsible for carrying out commercial transactions in Puerto Rico. (Id.) Thus, the third factor in American Paper is also established. Considering the "key requirement" of shareholder continuity, and the three additional factors described above, it is clear that a de-facto merger occurred. See id. at 122. Therefore, under the corporate successor doctrine, the America-CV Companies can be held liable for Caribevisión's debt to Plaintiff.

We conclude by noting the other major flaw in Respondents' motion for reconsideration. The motion virtually ignores what we have described as Caribevisión's "bold failures to meet its obligations." (Docket No. 85.) Respondents argue that Plaintiff could simply execute her judgment upon the ownership interest that Caribevisión has in the America-CV Companies. (Docket No. 134 at 7-8.) Respondents claim that "there is no

Civil No. 09-2262 (JAF) -10-

evidence" that Plaintiff cannot execute her judgment against Caribevisión. (Docket No. 134 at 6-7.)

This assertion is plainly contradicted by the record in this case. As Plaintiff stated in her Rule 25(c) motion, she has made numerous efforts to conduct post-judgment discovery with respect to Caribevisión. (Docket No. 121 at 4.) All of these efforts have been unsuccessful. (Id.) Moreover, the person who served as the face of Caribevisión in the litigation, and who has "consistently failed to comply with his discovery obligations,"[5] is Marcos Crespo, who was also a key executive of the America-CV Companies until 2013. (Docket No. 121 at 25.) We need not repeat here every instance in which the other persons affiliated with Caribevisión and the America-CV Companies have attempted to evade their responsibilities. Suffice it to say that "[t]he record in the instant case amply reflects the obstacles plaintiff has faced in securing any information from Caribevisión." (Id. at 4.)

Therefore, we reject Respondents' argument that Plaintiff could simply execute her judgment against Caribevisión's ownership in the America-CV Companies. Following our judgment in this case, Caribevisión has failed to produce a single document, designate a corporate representative, or even appear in court under penalty of sanctions. We will not allow any further efforts to frustrate Plaintiff's execution of her judgment. Plaintiff's motion under Fed. R. Civ. P. 58 will be granted. (Docket No. 136.) An amended judgment will issue separately, adding America-CV Station Group, Inc., and America CVPR, Inc., as party defendants.

---

[5] Plaintiff cites Docket Nos. 88, 98, 99, 102, 106, 108, 113, and 116. (Docket No. 121 at 24-27.)

Civil No. 09-2262 (JAF)                                                                                          -11-

## IV.

## Conclusion

For the foregoing reasons, Plaintiff's Rule 58 motion is hereby **GRANTED.** Respondents' motion for reconsideration is **DENIED.** An amended judgment will issue separately, adding America-CV Station Group, Inc., and America CVPR, Inc., as party defendants.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 22th day of April, 2013.

                                              s/José Antonio Fusté
                                              JOSE ANTONIO FUSTE
                                              United States District Judge